# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

DAVID G. FAULK and BONNIE J.
FAULK,

          Plaintiffs,

          v.

JELD-WEN, INC. d/b/a POZZI
WINDOW COMPANY; SPENARD
BUILDERS SUPPLY, LLC; and
RODERICK C. WENDT,

          Defendants.

Case No. 3:22-cv-00171-SLG

## ORDER RE MOTION TO DISMISS

Before the Court at Docket 65 is a Motion to Dismiss the Second Amended Complaint filed by Defendants JELD-WEN, Inc. d/b/a Pozzi Window Company and Pozzi Window Company owner, officer, and director Roderick C. Wendt (collectively "JELD-WEN"), which is joined by Defendant Spenard Builders Supply, LLC ("SBS") at Docket 68.[1] JELD-WEN, joined by SBS, also filed a supplemental request for judicial notice at Docket 67. Plaintiffs David G. Faulk and Bonnie J. Faulk opposed the request for judicial notice at Docket 69 and the motion to dismiss at Docket 72. Defendants replied at Dockets 70 and 74. Oral argument was heard on February 16, 2024.

---

[1] JELD-WEN also filed a Memorandum of Points and Authorities in support of their motion to dismiss at Docket 66.

## BACKGROUND

The facts, taken as true as pled in Plaintiffs' Second Amended Complaint for purposes of this motion to dismiss, are as follows:

Plaintiffs' lawsuit stems from their purchase of Pozzi windows for their custom-build home. They purchased the windows from SBS in 1999.[2] SBS was the only authorized agent for selling Pozzi windows in Alaska at that time.[3] Plaintiffs interacted solely with SBS when purchasing the windows and paid SBS for the windows.[4] Although no written warranty was provided at the time of sale, Plaintiffs allege that SBS agents "made oral representations that the Pozzi windows [came] with a lifetime warranty."[5] This warranty allegedly protected Plaintiffs from "defects including the cost of installation."[6]

Even before installation of any windows occurred, Plaintiffs were informed by an agent of SBS that "numerous windows" ordered for Plaintiffs' home were "defective" due to the glass or grid configuration and needed to be reordered.[7] Plaintiffs allege that issues with the windows continued throughout the building of their home. In early 2001, an SBS agent informed Plaintiffs that some windows

---

[2] Docket 61 at ¶¶ 1, 31 (Second Amended Complaint ("SAC")).

[3] SAC at ¶¶ 1, 18.

[4] SAC at ¶¶ 32, 36.

[5] SAC at ¶ 34. *See also* SAC at ¶¶ 2, 7, 31.

[6] SAC at ¶ 31.

[7] SAC at ¶ 37.

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 2 of 27

Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 2 of 27

had issues requiring additional installation work and that more windows had to be reordered due to damage.[8]  During this time, Plaintiff only interacted with SBS in relation to these warranty issues.[9]  SBS coordinated repairs, replacements, and installations.[10]

The Second Amended Complaint alleges that the Pozzi windows continued to fail after installation.  In early 2002, SBS disclosed a "delaminating problem" on the windows.[11]  According to Plaintiffs, this was part of a larger problem with the Pozzi windows.  They allege that the Pozzi windows were manufactured with defects, including resins that did not contain enough UV absorber, which made the glass weak and subject to UV deterioration.[12]  Plaintiffs further allege that JELD-WEN and SBS knew or should have known that the Pozzi window glass would likely fail due to these defects.[13]  They allege that after the sale, JELD-WEN and SBS concealed information regarding the defective nature of the windows.[14]

Around this time, in 2001, SBS filed a lawsuit against Plaintiffs in state court.  SBS sought to collect funds from Plaintiffs related to their custom-build home,

---

[8] SAC at ¶ 40.

[9] SAC at ¶ 33.

[10] SAC at ¶¶ 33, 36, 43.

[11] SAC at ¶ 43.

[12] SAC at ¶ 22.

[13] SAC at ¶ 23.

[14] SAC at ¶ 25.

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 3 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 3 of 27

including money owed for the Pozzi windows.[15]  Plaintiffs settled with SBS at the end of 2002 but refused to waive or release their warranty claims for the windows due to the ongoing quality issues.[16]  During this time period, on December 3, 2002, Plaintiffs received a written copy of a warranty from JELD-WEN for the windows.[17]  Plaintiffs allege that they had already "materially relied upon representations of a lifetime warranty to their detriment" and that SBS had never provided any such written warranty to them for the windows prior to that point.[18]

Throughout this period, SBS continued to be responsible for application of the warranty and coordination of repairs.[19]  Plaintiffs allege that SBS stated that windows would be replaced as they failed and that Pozzi windows and SBS would "stand behind the products [they] sell."[20]  Plaintiffs allege that initially the window replacements would include the entire window casement but that later window deliveries were made without the entire casement, "requiring [them] to incur significant work to install the windows."[21]  They allege that they were required to

---

[15] SAC at ¶ 41.

[16] SAC at ¶¶ 41, 42.

[17] SAC at ¶ 35.

[18] SAC at ¶ 35.

[19] SAC at ¶ 43.

[20] SAC at ¶ 38.

[21] SAC at ¶ 39.

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 4 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 4 of 27

follow-up with SBS to request window casements on numerous occasions.[22]

Plaintiffs allege that in 2004, SBS "abandoned its duties to resolve warranty issues with the Pozzi windows directing Plaintiffs to seek relief from Pozzi."[23]  Up to this point, SBS had been the "sole point of contact for the warranty issues."[24] Plaintiffs objected to SBS's disclaimer of any further responsibility to coordinate warranty repairs, asserting that the 2002 state court settlement required SBS to continue in that role.[25]  However, SBS no longer had a relationship with JELD-WEN because JELD-WEN had discontinued Pozzi windows and terminated SBS as a seller.[26]  Plaintiffs thereafter had to work directly with JELD-WEN for replacements.

Plaintiffs allege that in the face of the continued incremental failure of their windows and in response to Plaintiffs' warranty demands, JELD-WEN "took the position it would replace windows but only after the failure of a particular specific window."[27]  It then "replaced and installed windows in the residence that failed and occluded the view outside at no cost[ ]" on at least three separate occasions, which,

_____

[22] SAC at ¶ 39.

[23] SAC at ¶ 45.

[24] SAC at ¶ 46.

[25] SAC at ¶ 47.

[26] SAC at ¶ 48.

[27] SAC at ¶ 50.

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 5 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 5 of 27

according to Plaintiffs, were actions that ratified the lifetime warranty.[28]

Plaintiffs allege that this arrangement changed in 2016, when JELD-WEN began "requiring Plaintiffs to pay a portion of the significantly 'discounted' costs for replacement windows."[29]  Plaintiffs paid JELD-WEN some fraction of the costs for replacement windows in 2016, 2017, and 2018, but those replacements "failed to meet the description of the replacement windows agreed to by Plaintiffs and JELD-WEN."[30]  Then on July 31, 2020, JELD-WEN refused to perform any further on its warranty obligations.[31]

On June 13, 2022, Plaintiffs filed a complaint against Defendants.  Initially, the lawsuit was brought as a class action on behalf of hundreds of Alaskans based on the defective nature of the Pozzi windows.[32]  Plaintiffs have since removed the class allegations.[33]  Plaintiffs filed their Second Amended Complaint as individuals.[34]  They raise the following state law claims against Defendants:

1.  Count I: Breach of Contract and Express Warranty;

2.  Count II: Beach of Implied Warranty of Merchantability;

3   Count III: Breach of the Implied Warranty of Fitness for a Particular

---

[28] SAC at ¶ 49.

[29] SAC at ¶ 51.

[30] SAC at ¶¶ 51, 52.

[31] SAC at ¶ 53.

[32] Docket 1-1 at 8-9.

[33] Docket 48 at 2-3; Docket 59 at 6-8; Docket 61.

[34] Docket 61.

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 6 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 6 of 27

Purpose;

4. Count IV: Violation of Alaska's Unlawful Trade Practices Act;

5. Count V: Unjust Enrichment;

6. Count VI: Breach of the Implied Covenant of Good Faith and Fair Dealing; and

7. Count VII: Fraud and Misrepresentation.[35]

Defendants request that all claims be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).[36]

## LEGAL STANDARDS

Under Rule 12(b)(6), the allegations in the complaint are accepted as true and construed in the light most favorable to the plaintiff.[37]  To survive under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[38]  Dismissal is warranted where the plaintiff fails to present a cognizable legal theory or fails to allege facts sufficient to support a cognizable legal theory.[39]

When deciding a motion under Rule 12(b)(6), a court's review is generally limited to review of the complaint itself.  However, a court may review materials

---

[35] Docket 61 at ¶¶ 31-90.

[36] Docket 65 at 2.

[37] *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[39] *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 7 of 27

that are properly submitted as part of the complaint and may take judicial notice of undisputed matters of public record.[40]  Furthermore, a court may consider materials whose contents are described or otherwise incorporated into the complaint by reference and can assume the truthfulness of these materials for purposes of deciding the motion.[41]

The Court applies federal procedural law and Alaska substantive law to the state law claims.[42]

## DISCUSSION

### Limited Warranty: Request for Judicial Notice

Defendants ask this Court to extend its Rule 12(b)(6) review beyond the allegations in the Second Amended Complaint and consider the standard written warranty that JELD-WEN used for products it sold between 1999 and 2002.[43]  This document sets forth a limited warranty, requiring purchasers to pay a pro-rated amount for replacement glass starting ten years after purchase.[44]  Defendants assert the Court can take judicial notice of the standard written warranty and use

---

[40] *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

[41] *See id.*; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002-03 (9th Cir. 2018).

[42] *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[43] Docket 67 at 2.

[44] Docket 6-2 at 2.

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 8 of 27

it to dismiss Plaintiffs' claims.[45]  However, because the written warranty does not contain facts that are undisputed matters of public record, the issue is more aptly addressed as a request to consider the extraneous document through incorporation by reference.

Under the doctrine of incorporation by reference, this Court may consider JELD-WEN's standard limited warranty for purposes of Defendants' Rule 12(b)(6) motion if it is referred to in the complaint, if it is essential to Plaintiffs' claims, and if its authenticity is not disputed.[46]  Plaintiffs' Second Amended Complaint refers to the fact that they received a written warranty from JELD-WEN in 2002. Moreover, the complaint acknowledges that this written warranty did not conform to their expectations of the previously provided lifetime warranty.[47]  During oral argument on the issue, Plaintiffs further acknowledged that the terms of this after-the-fact warranty are not in dispute, thereby conceding that the written warranty they received from JELD-WEN contradicted the alleged oral warranty promised by SBS at the time of purchase by being limited in duration and requiring pro-rated payments from purchasers.[48]  Consequently, the written warranty may be considered for the limited purpose of establishing that the document JELD-WEN

---

[45] *See* Docket 67.

[46] *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

[47] SAC at ¶ 35 ("[JELD-WEN] provided a written copy of a warranty for the first time on December 3, 2002, years after the initial purchase and after Plaintiffs had materially relied upon representations of a lifetime warranty to their detriment.").

[48] Docket 81 at 16.

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 9 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 9 of 27

provided to Plaintiffs in 2002 and referenced in the Second Amended Complaint provided a limited warranty—one that phased out over time.

The Court, however, must use caution when drawing any inferences from documents incorporated by reference on a motion to dismiss.[49]  Here, Plaintiffs dispute the applicability of this written warranty and do not concede that the terms set forth in it govern the parties' dispute or otherwise determine the merits of their claims.  Given this dispute, the Court does not rely on the written warranty to determine whether Plaintiffs have stated plausible claims for relief in their Second Amended Complaint against JELD-WEN.  Rather, the Court adopts Plaintiffs' assertion that they were given an oral lifetime warranty at the time of purchase in 1999.[50]

### Express Warranty Claim

Plaintiffs bring a claim for breach of express warranty and contract against Defendants.  They allege that SBS sold the Pozzi-brand windows to Plaintiffs with a lifetime warranty against defects including the costs of installation.  Nothing written was provided, but Plaintiffs allege that JELD-WEN affirmed this warranty through words and actions.[51]  Plaintiffs allege that the breach of warranty occurred

---

[49] *Khoja*, 899 F.3d at 1003.

[50] *Id.* ("[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.  This admonition is, of course, consistent with the prohibition against resolving factual disputes at the pleading stage.").

[51] SAC at ¶ 49.

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 10 of 27

no earlier than July 31, 2020, when JELD-WEN refused to perform, either wholly or partially, its replacement obligations.[52]  They allege that due to JELD-WEN's breach they have suffered damages in an amount of at least $1,000,000, including the replacement costs of the remaining deficient windows, which are estimated to be $ 811,105.[53]

Defendants seek to dismiss this claim, among other reasons, based on the expiration of the applicable statute of limitations.  Alaska Statute ("AS") 45.02.725 sets forth a four-year statute of limitations for claims involving a breach of a contract for the sale of goods.  Under this statute, a breach of warranty action related to the sale of goods usually accrues at the time of delivery.[54]  "The one statutory exception is when a warranty *explicitly* extends to future performance."[55] When a warranty guarantees the future performance of the goods, and thus a breach cannot occur until the time of performance, the cause of action accrues when the breach is or should have been discovered.[56]  That is, under Alaska law, the limitations period for a breach of an extended warranty begins when the product fails to perform, unless that harm is not readily apparent, in which case the applicable date is when the plaintiff reasonably should have known the facts that

---

[52] SAC at ¶ 54.

[53] SAC at ¶ 55.

[54] AS 45.02.725(b).

[55] *Armour v. Alaska Power Auth.*, 765 P.2d 1372, 1374 (Alaska 1988) (emphasis in original).

[56] AS 45.02.725(b).

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 11 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 11 of 27

support a breach of warranty claim. Generally, reasonableness is set by the inquiry-notice date, which is the date when the plaintiff has information that would alert a person about the potential cause of action and a need for further inquiry.[57]

In order to dismiss Plaintiffs' express warranty claim as untimely under Rule 12(b)(6), it must be apparent from the face of the Second Amended Complaint that the limitations period began running by June 13, 2018—four years before Plaintiffs commenced this action. Given that Plaintiffs assert they were provided with an explicit lifetime warranty guaranteeing the windows' quality and performance, the statute of limitations started not at the time of delivery but, pursuant to AS 45.02.725(b), at the time the breach was discovered or reasonably should have been discovered.

An express warranty is created through an affirmation or promise by the seller relating to the nature or quality of the goods being sold that becomes the basis of the bargain; the warranty is breached if the goods do not conform to what was promised.[58] It is clear from the Second Amended Complaint that Plaintiffs had a breach of express warranty claim long before 2018. Based on the allegations in the Second Amended Complaint, Plaintiffs purchased the Pozzi windows from

---

[57] *See Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1275 (Alaska 2013) (noting that when the discovery rule is applicable, the inquiry-notice date is usually when the limitations period begins to run).

[58] AS 45.02.313(a)(1) ("[A]n affirmation of fact or promise made by the seller to the buyer that relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise[.]").

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 12 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 12 of 27

SBS in 1999 with an oral promise of lifetime warranty against defects, guaranteeing replacement of any defective windows, including installation, at no cost to Plaintiffs.[59] Shortly thereafter, SBS informed Plaintiffs about defects in some of the windows, and the Second Amended Complaint outlines how the windows continued to incrementally fail from that point forward.[60] This incremental failure of windows was known to Plaintiffs, per their allegations, by around 2001.[61] Indeed, they admit that they refused to waive or release any warranty claims against SBS in 2002 in conjunction with a state court lawsuit brought by SBS because of ongoing window failures.[62] That same year, SBS informed Plaintiffs that the windows had a "delaminating problem."[63] JELD-WEN thereafter refused Plaintiffs' demands to provide wholesale replacement, opting instead to replace a window only upon demonstrated failure.[64] The fact that JELD-WEN did not recall the windows as defective and refused to address these quality issues wholesale necessarily inflicted injury on Plaintiffs in the form of additional coordination efforts and related costs as described in the complaint. Thus, Plaintiffs have long been

---

[59] SAC at ¶¶ 31, 49.

[60] *See, e.g.*, SAC at ¶¶ 37, 39, 40, 42-43, 50.

[61] SAC at ¶ 41.

[62] SAC at ¶ 42 ("Plaintiffs refused to waive or release its warranty claims due to ongoing issues with the incremental failure of the Pozzi windows.").

[63] SAC at ¶ 43.

[64] SAC at ¶¶ 49-50.

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 13 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 13 of 27

aware of all elements needed to support a breach of warranty claim based on the quality of the windows.[65]

Plaintiffs assert that despite these known defects and JELD-WEN's refusal of their demand for wholesale replacement of defective windows, their breach of express warranty claim did not accrue until 2020, when JELD-WEN stopped all efforts to replace the windows. Up until that time, they assert, JELD-WEN was at least partially performing its replacement obligations under the terms of the oral warranty agreement. They argue that the harm they seek to redress is the full repudiation of the agreement to replace defective windows when they fail and now seek damages that include the cost of replacing over 130 remaining defective windows.[66]

Focusing on the warranty aspect of Plaintiffs' claim, the breach occurred before the 2020 repudiation as described above. However, the express warranty as to the quality of the goods was accompanied by a promise to replace defective windows at no cost to Plaintiffs for a "lifetime." Plaintiffs assert that JELD-WEN violated this aspect of the express warranty agreement in 2020 and not earlier. This Court disagrees: the claim for a breach of the agreement to replace defective windows and install new ones at no cost accrued prior to 2018.

---

[65] *Cf. Universal Motors, Inc. v. Waldock*, 719 P.2d 254, 257 (Alaska 1986) (noting that elements in a Uniform Commercial Code express warranty suit against a dealer and manufacturer include a defect which resulted from factory materials or workmanship, a request that the defect be repaired, and a refusal by the dealer to do so).

[66] SAC at ¶ 55; Docket 61-2 at 24 (SAC, Exhibit 2).

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 14 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 14 of 27

The alleged sequence of events with JELD-WEN shows that Plaintiffs had a claim for breach of an agreement to replace defective windows at no cost by at least 2016. Plaintiffs allege that, "[i]n early 2004, [SBS] abandoned its duties to resolve warranty issues with the Pozzi windows directing [them] to seek relief from Pozzi."[67] They allege that the Pozzi window division was shut down at that same time, making it difficult for customers to assert warranty claims.[68] They allege that JELD-WEN, despite continued incremental failures and delamination problems, refused Plaintiffs' demands to replace all of their windows wholesale.[69] Prior to this refusal, Plaintiffs had received the standard written warranty from JELD-WEN detailing the company's limited warranty policy that undisputedly contradicted the oral one that Plaintiffs believed to be operative.[70] Then, in 2016, JELD-WEN, per Plaintiffs' complaint, "changed its position" on the terms of the warranty and required Plaintiffs to pay a portion of the replacement costs in accordance with the written warranty given to Plaintiffs in 2002 and contrary to the oral lifetime warranty agreement Plaintiffs believed was applicable.[71] At this time in 2016, Plaintiffs were clearly on notice of JELD-WEN's repudiation of any initial oral agreement to replace windows at no cost and its change of position on the applicable warranty.

---

[67] SAC at ¶ 45.

[68] SAC at ¶ 48.

[69] SAC at ¶ 50.

[70] SAC at ¶ 35.

[71] SAC at ¶ 51.

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 15 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 15 of 27

They were aware that they had been injured by these replacement issues. Therefore, Plaintiffs' breach of express warranty claim, including any agreement to replace defective windows at no cost, based on the oral lifetime warranty allegedly promised at the time of purchase, is untimely.

Plaintiffs assert that the continuing violations theory tolls the statute of limitations on their express warranty claim. Alaska courts cite to and borrow the reasoning from federal law in the description and application of this theory.[72] This theory "functions as an exception to the discovery rule of accrual 'allowing a plaintiff to seek relief for events outside of the limitations period.'"[73] When applied, wrongful conduct on the part of a defendant will not begin the running of the statute of limitations period if that conduct is part of a series of related, continuing wrongs that continued into the limitations period.[74] In other words, the theory prevents claims that may have initially accrued outside the relevant limitations period from being time-barred.[75] "The doctrine applies not to an initial violation that causes

---

[72] *See Reich v. Cominco Alaska, Inc.*, 56 P.3d 18, 26 & n.35 (Alaska 2002) (citing a federal case, *Morgan v. National Railroad Passenger Corp.*, 232 F.3d 1008, 1014-15 (9th Cir. 2000), when describing the continuing violations theory and how it can be used in a hostile work environment claim to broaden the statute of limitations period); *Egner v. Talbot's, Inc.*, 214 P.3d 272, 283 (Alaska 2009) (discussing whether the continuing violations theory applied in an action involving contractual shareholder's rights claims and applying the reasoning in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), to affirm the lower court's decision that the theory did not apply to the facts of the case).

[73] *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (quoting *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)).

[74] *See Smith v. State*, 282 P.3d 300, 304 (Alaska 2012) (noting that the theory "allows plaintiffs to establish an ongoing tort through incidents that occurred before the statute of limitations period and that continued into the limitations period" (quoting *Reich*, 56 P.3d at 26)).

[75] *Sengupta v. Univ. of Alaska*, 21 P.3d 1240, 1249 (Alaska 2001) ("Under this theory, certain

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 16 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 16 of 27

alleged permanent harm, but instead to an ongoing series of incidents."[76] Plaintiffs assert that any prior breach of warranty on the part of Defendants was part of an ongoing cause of action culminating with the final repudiation in 2020, when they were finally placed on inquiry notice as to the breach, and thus any prior actions on the part of JELD-WEN did not trigger the running of the statute of limitations.

This Court is unpersuaded that the continuing violations theory has any application here. The crux of Plaintiffs' breach of express warranty claim is that the Pozzi windows ordered and installed when their house was built in the early 2000s were inherently defective and that the operative warranty requires JELD-WEN to replace them forever at no cost to Plaintiffs. The harm alleged here stems from the defective windows made and sold by JELD-WEN in 1999. Indeed, Plaintiffs seek damages that include the costs of replacing *all* remaining windows in their 24-year-old house—over 130 of them—due to inherent defects.[77] This is not a "continuing violations" claim with a series of individual wrongs, but a permanent breach of warranty claim based on a defective product that continues to cause Plaintiffs harm.[78] As described in detail above, Plaintiffs have been aware of window defects for over 20 years. They have been aware of all the facts giving

---

patterns of [wrongful conduct] can preserve a claim as timely that might otherwise be barred by the statute of limitations").

[76] *Smith*, 282 P.3d at 304-05.

[77] SAC at ¶ 55.

[78] *See Smith*, 282 P.3d at 304 (noting that when the allegations of harm focus on initial actions taken by the defendants and not a continuing course of conduct the doctrine does not apply).

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 17 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 17 of 27

rise to a breach of warranty claim for much of that time or, at the very latest, by 2016 when, as acknowledged by Plaintiffs, JELD-WEN "changed its position" and started charging Plaintiffs for the replacement of windows in accordance with the conflicting limited warranty.[79]  The continuing violations doctrine does not apply to give Plaintiffs more time to address known warranty problems.[80]

**Implied Warranty Claims**

Plaintiffs assert claims against Defendants for a breach of the implied warranty of merchantability and a breach of the implied warranty of fitness for a particular purpose.  Again, under AS 45.02.725(b), a four-year statute of limitations applies to breach of warranty claims.  Except for situations where there has been an explicit extended warranty guaranteeing future performance, the limitations period begins to run when "tender of delivery is made."[81]  Under Alaska law, claims for a breach of the implied warranty of merchantability and fitness for a particular purpose do not extend to future performance.[82]  Consequently, any implied warranty claim begins to run at the time of purchase.[83]  Plaintiffs purchased the

---

[79] SAC at ¶ 51.

[80] *Sengupta*, 21 P.3d at 1249 ("[I]f a plaintiff's actions show that [he] knew [his] rights had been violated by a certain point in time, the limitations period starts running from that date.").

[81] AS 45.02.725(b).

[82] *Armour*, 765 P.2d at 1374-75 (rejecting the plaintiff's assertion that an implied warranty is one that extends to future performance and thereby extends the statute of limitations and instead adopting the position of courts that have held that "implied warranties of merchantability and fitness for a particular purpose . . . by definition do not explicitly extend to future performance").

[83] *Id.* at 1375.

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 18 of 27

Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 18 of 27

windows over two decades ago: the statute of limitations has long run on any potential implied warranty claims.

## UTPA, Fraud, Breach of Good Faith Claims

Plaintiffs assert that Defendants violated the Alaska Unfair Trade Practices and Consumer Protection Act ("UTPA") and engaged in fraud and misrepresentation. These claims are premised on the following allegations: Defendants sold windows that were defective and subject to inevitable failure; they did not disclose the inherent defects upon learning of them; and they failed to fully compensate Plaintiffs for costs incurred in replacing these defective windows.[84] Additional allegations of deception include discontinuing Pozzi-brand windows and the Pozzi-brand division within JELD-WEN in order to conceal defects and deflect warranty claims, failing to recall the defective windows, denying the inherently defective nature the windows, and lying about the quality of the windows and the available warranty.[85]

UTPA claims and fraud claims are subject to a two-year statute of limitations.[86] For both types of claims, the statute of limitations begins to run once the injury is discovered.[87] However, when the injury does not readily indicate the

---

[84] SAC at ¶¶ 70, 86-87. The paragraphs of the SAC are misnumbered at page 20 and the reference to ¶ 86 refers to the paragraph set forth in Count VII on that page.

[85] SAC ¶¶ 86(g), 87(d), (e), (f).

[86] *See* AS 45.50.531(f) (establishing a two-year statute of limitations for UTPA claims); AS 09.10.070(a) (establishing a two-year statute of limitations for general tort claims).

[87] *Jones v. Westbrook*, 379 P.3d 963, 969-70 (Alaska 2016) (discussing and applying discovery

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 19 of 27

existence of a claim, the statute of limitations may be tolled until the inquiry-notice date, which is the date the plaintiff has information that would alert a reasonable person about the cause of action or prompt an inquiry aimed at protecting that person's rights.[88]  For UTPA claims, the limitations period begins to run when the plaintiff reasonably should have discovered that the defendant's conduct caused a loss—not when the plaintiff knew or should have known that the defendant's conduct was illegal.[89]

The facts alleged in the Second Amended Complaint show that Plaintiffs' UTPA and fraud claims are untimely.  As for the allegations about the quality of the windows and any related deceptive or misleading conduct, the inquiry-notice date for claims based on these facts stretches far beyond the two-year cutoff.  The complaint acknowledges that Plaintiffs were aware of the incremental failure of these windows as early as 2001 and that Plaintiffs were informed about a delamination problem with the windows as early as 2002.  The complaint references the continued failure of some of these windows over the next two decades.  Plaintiffs acknowledge they suffered harm from the incremental failures starting in the early 2000s, when they had to expend significant effort to install replacement windows.  Moreover, Plaintiffs necessarily suffered harm based upon

---

rule to UTPA claim); *Bauman v. Day*, 892 P.2d 817, 825-26 (Alaska 1995).

[88] *Gefre*, 306 P.3d at 1274-75; *Park v. Spayd*, 509 P.3d 1014, 1019-20 (Alaska 2022).

[89] *Jones*, 379 P.3d at 970.

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 20 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 20 of 27

JELD-WEN's continued refusal to acknowledge the inherent defects, recall the windows, and provide wholesale replacement, which forced Plaintiffs to deal with the issue on a window-by-window basis.

The claim that JELD-WEN may have engaged in fraudulent and deceptive conduct when it closed its Pozzi-brand division and discontinued any contact between that division and consumers accrued in 2004, according to the Second Amended Complaint.[90] That year, Plaintiffs began coordinating replacements directly with JELD-WEN after SBS refused further warranty services, and thus they necessarily knew at that time there was no longer a Pozzi-brand division within JELD-WEN. This information, along with the ongoing window failures and replacement issues, put Plaintiffs on notice of potential UTPA or fraud claims. That is, the facts known to Plaintiffs in 2004 should have, at a minimum, reasonably alerted Plaintiffs about a potential cause of action related to deception, fraud, or misrepresentation with respect to the quality and suitability of the Pozzi-brand windows and Defendants' conduct in relation to the product.

As for any alleged deception or misrepresentation about the warranty, Plaintiffs have been on notice about potential conflicting terms for many years. The Second Amended Complaint acknowledges that in 2002, Plaintiffs received JELD-WEN's standard written limited warranty with terms that differed from the

---

[90] SAC at ¶ 9.

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 21 of 27

lifetime warranty Plaintiffs believed to be operative.[91]  It also states that Plaintiffs had trouble getting their replacement windows installed prior to 2004 when working with SBS despite the oral warranty that was supposed to cover installation.[92]  They allege JELD-WEN "changed its position" on the lifetime warranty in 2016 and started charging them for replacement windows in contravention of the terms of the lifetime oral warranty.[93]  Thus, Plaintiffs admittedly were on notice of any fraud or misrepresentation claims based on the terms of the lifetime warranty well before the two-year statute of limitations window.

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing stems from the same allegations.  Plaintiffs rely on the fact that Defendants sold windows that were subject to inevitable failure, did not disclose the inherent defects with the windows once known, refused to provide replacement windows and installation at no cost, and discontinued the Pozzi-brand windows and Pozzi division in order to limit customer contact and the filing of warranty claims.

Again, a claim for bad faith based on these allegations is untimely.  While Defendants themselves assert that the catch-all, ten-year statute of limitations under AS 09.10.100 applies here, either the four-year limitations period set forth in

---

[91] SAC at ¶ 35.

[92] SAC at ¶ 39 ("Plaintiffs were required to follow-up requesting the window grid on numerous occasions from Spenard.").

[93] SAC at ¶ 51.

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 22 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 22 of 27

Alaska's Uniform Commercial Code[94] or the general three-year limitations period for contract claims[95] more aptly applies here given that the bad faith claim arises out of an alleged warranty agreement with SBS and JELD-WEN. The Court need not definitively decide what the applicable limitations period is, however, because the claim is untimely regardless. As noted above, Plaintiffs have been on notice of the inherent defects, incremental product failures, unexpected installation costs, refusal to recall and replace windows, and discontinuance of the Pozzi-brand windows and division closure long before 2012.

**Unjust Enrichment**

Plaintiffs' remaining claim is one for unjust enrichment. "Unjust enrichment is not a cause of action but a prerequisite to recovery under the doctrine of restitution."[96] "Restitution [is] an equitable remedy based on the concept of quasi-contract [and] is available only when there is no other adequate remedy at law."[97] The concept of quasi-contract allows the plaintiff to recover when the defendant has received a benefit pursuant to a contract that is later determined to be unenforceable: "Quasi-contracts are not true contracts but are judicially created

---

[94] AS 45.02.725.

[95] AS 09.10.053.

[96] *Haines v. Comfort Keepers, Inc.*, 393 P.3d 422, 428 (Alaska 2017) (internal quotation marks omitted).

[97] *Id.*

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 23 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 23 of 27

obligations to do justice."[98]   To recover under an unjust enrichment theory, the plaintiff must show: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention by the defendant of the benefit under circumstances where it would be inequitable for him to retain it without paying the value thereof.[99]   The defendant must have received a "true windfall" or "something for nothing."[100]

Here, Plaintiffs allege that they conferred benefits on JELD-WEN and SBS by paying for windows that were not properly manufactured and thus not suitable for residential use.   They allege that JELD-WEN and SBS knowingly accepted payment under inequitable circumstances because they supplied defective windows and used unfair and deceptive methods to obtain and retain Plaintiffs' money.

These allegations cannot support a plausible unjust enrichment claim; the facts as alleged show there has not been a true windfall to Defendants.   While Plaintiffs have been dealing with incremental window failures for over two decades, it is clear from the Second Amended Complaint—wherein Plaintiffs seek damages that include the estimated cost to replace all of the remaining original windows— that some of the windows in Plaintiffs' home have not yet failed and have been in

---

[98] *Alaska Sales & Servs., Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987).

[99] *State v. Wetherelt*, 931 P.2d 383, 390 n.13 (Alaska 1997).

[100] *Id.* (quoting *Alaska Sales*, 735 P.2d at 746).

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 24 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 24 of 27

use as expected for over twenty years. It is also alleged that, through 2020, JELD-WEN replaced windows as they failed. Thus, Plaintiffs received some benefit from their purchase; they cannot assert that Defendants obtained payment for nothing. "[A] difference in value between the benefit expected and the benefit received does not alone create unjust enrichment."[101] There must be a true windfall, and that element is not plausible based on the facts presented in the Second Amended Complaint.

Defendants correctly note that there is also an issue with the timeliness of Plaintiffs' unjust enrichment claim. Based on the Second Amended Complaint, the unjust enrichment claim is specifically premised on Plaintiffs' payment for windows in 1999 that immediately began failing and have been admittedly failing ever since because of defects in the windows. The complaint admits that Plaintiffs have been suffering the effects of these defective windows since the early 2000s—continually dealing with warranty claims and issues with installation—and that JELD-WEN refused Plaintiffs demands to wholesale replace the defective windows and discontinued the Pozzi-brand division to conceal the inherent defects and make customer warranty claims more difficult. As explained above, Plaintiffs were aware of these issues by at least 2004 when SBS disclaimed any further involvement and they began to deal directly with JELD-WEN, and thus they were aware of all the facts supporting a theory of unjust enrichment by that time.

---

[101] *In re Est. of Rodman*, 498 P.3d 1054, 1071-72 (Alaska 2001).

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 25 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 25 of 27

However, given that this claim for unjust enrichment is a request for restitution based on a quasi-contract theory, and therefore equitable in nature, timeliness must be addressed through a laches defense and not through the application of a statute of limitations.[102] Demonstrating laches requires the defendant to show that the plaintiff unreasonably delayed seeking relief and the delay prejudiced the defendant.[103] While the aspect of unreasonable delay is clearly established on the face of the Second Amended Complaint,[104] the Court cannot simply imply the required showing of prejudice based on the length of the delay; there must be a showing that Defendants lost money or services provided or that there has been a loss of evidence because of the delay.[105] The element of prejudice is not obvious based on the allegations in the complaint. Nonetheless, as explained above, Plaintiffs' Second Amended Complaint fails to state a plausible claim for unjust enrichment.

---

[102] *See Moffitt v. Moffitt*, 341 P.3d 1102, 1104-05 (Alaska 2014) (holding that the statutes of limitations do not control the time limit for asserting equitable claims and that the laches defense applies to the plaintiff's restitution claims); *Metcalfe v. State*, 382 P.3d 1168, 1176 (Alaska 2016) ("We have held that equitable relief claims are not subject to statutes of limitations and are instead controlled by the doctrine of laches.").

[103] *Burke v. Maka*, 296 P.3d 976, 979 (Alaska 2013).

[104] *See Anderson v. State*, 440 P.3d 217, 221 (Alaska 2019) (applying the laches defense to a case where the delay was 25 years and noting that this length of delay is unreasonable as a matter of law).

[105] *See Bibo v. Jeffrey's Rest.*, 770 P.2d 290, 293-94 (Alaska 1989) (declining to apply the laches defense absent a showing of specific prejudice and explaining that the prejudice element is shown where money or valuable services will be wasted because of the delay or where loss of evidence is shown).

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 26 of 27
Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 26 of 27

**CONCLUSION**

Based on the foregoing discussion, Defendants' motion to dismiss at Docket 65 is GRANTED. This case is hereby DISMISSED. Further, because no additional facts otherwise consistent with the Second Amended Complaint could cure the identified deficiencies, amendment would be futile, and dismissal is with prejudice.[106] The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 24th day of May 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[106] *Telesaurus VPC, LLC v. Power,* 623 F.3d 998, 1003 (9th Cir. 2010) (setting forth the standard of review for dismissals without leave to amend and stating that a "district court may deny a plaintiff leave to amend if it determines that allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency . . . or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies" (citations and internal quotation marks omitted)).

Case No. 3:22-cv-00171-SLG, *David G. Faulk, et al. v. JELD-WEN, Inc., et al.*
Order Re Motion to Dismiss at Docket 65
Page 27 of 27

Case 3:22-cv-00171-SLG   Document 82   Filed 05/24/24   Page 27 of 27